```
                    United States District Court
                      District of Massachusetts
```

| | |
|---|---|
| BENJAMIN A. SCHILLING,  ) | |
| ) | |
|     Plaintiff,  ) | |
| ) | |
|     v.  ) | Civil Action No. |
| ) | 14-14262-NMG |
| CHATHAM FIVE STAR LLC and  ) | |
| RICHARD D. COHEN,  ) | |
| ) | |
|     Defendants.  ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

**I.   Background**

Plaintiff Benjamin Schilling ("Schilling") filed this action against defendants Chatham Five Star LLC ("Five Star") and Richard Cohen ("Cohen") alleging negligence against both defendants resulting in personal injury. According to plaintiff, on August 10, 2013 Schilling was attending to the Five Star, a 55-foot vessel ("the vessel"), for the purpose of untying a line before the vessel's departure from the Chatham Bars Inn in Chatham, Massachusetts. Schilling was employed as the Marine Operations Manager of CBI Operations LLC ("Operations"), one of the entities that managed the Chatham Bars Inn.

-1-

At the time of the accident defendant Cohen, an owner of the Chatham Bars Inn, was at the helm of the vessel. It was owned by Five Star. Cohen was the sole shareholder and president of Capital Properties Management, Inc., the sole member of Five Star. Plaintiff claims that Cohen negligently engaged the engine of the vessel as Schilling was untying the line, causing it to snap and recoil, striking and injuring Schilling's right hand.

Cohen was aboard the vessel with his girlfriend, her two minor sons and their babysitter. He testified during his deposition that he did not remember why he was departing, how long he was to be gone or where he was going on the boat. In his responses to plaintiff's interrogatories he stated he thought he was either traveling to Nantucket or Martha's Vineyard or going whale watching.

After the accident Schilling received workers' compensation benefits under state law, including the payment for his medical treatment, and entered into a settlement to receive a lump sum amount for his workers' compensation claim against Capital Property Services LLC a/k/a Chatham Bars Inn, an entity related to Operations.

**II. Motions for Summary Judgment**

On March 15, 2016, defendants filed a motion for summary judgment on both negligence counts of the complaint. The same

day, plaintiff moved for summary judgment with respect to Cohen's affirmative defense of co-employee immunity under the Massachusetts Workers' Compensation Act, M.G.L. ch. 152.

**A. Legal Standard for Summary Judgment**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Analysis**

   **1. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment on Cohen's affirmative defense that recovery in this case is barred under the Massachusetts workers' compensation statute, M.G.L. ch. 152 § 23 and 24, because Cohen was acting as Schilling's co-employee at the time he allegedly caused Schilling's injury.  That statute, in essence, ensures that workers injured during the course of their employment will be compensated by their employers.  In exchange for providing for such compensation the statute creates a presumptive waiver of employees' common law right to recover damages for their injuries from both their employer and any co-employee who may have caused such injuries. Estate of Moulton v. Puopolo, 5 N.E.2d 908, 914 (Mass. 2014). The statute preserves, however, the right of an employee to bring claims against other entities that may have been responsible for the accident. See M.G.L. ch. 152 § 15.

Schilling first argues that he is entitled to summary judgment because there is no genuine dispute that Cohen was not a co-employee.  He points out that Cohen testified at his

deposition that he was unaware of ever receiving any compensation or documentation of compensation from Operations, such as a W2, 1099 or K1 form.  Cohen further concedes that he was not a salaried employee.  Kelli Bryant, Director of Finance for Operations, also testified that Cohen had never been a salaried employee of that LLC during the relevant time period.  As defendant points out, however, under M.G.L. ch. 152 an individual's status as an employee is not necessarily defined by his receipt of compensation. See Tracy v. Cambridge Junior College, 304 N.E.2d 921, 923 (1973).

Instead, the workers' compensation statute defines an employee as a

> person in the service of another under any contract of hire, express or implied, oral or written.

Id. § 1(4).  Cohen claims that he meets the statutory definition of an employee because he had a "contract for hire" as the President of Operations, as shown by a form titled "Designation by Manager of Officers of CBI Operations, LCC," dated January, 2009, which designates Cohen as "President" of the company "until otherwise changed by the undersigned."  The form is not countersigned by the designated officers and accordingly manifests no intention by the officers to accept their designations, and for that reason, among others, cannot

constitute a contract for hire.  It may, however, be evidence of a separate oral contract for Cohen's hire.

Cohen further contends that he worked "in the service of" Operations because he communicated "criticisms and directions" to Operations employees such as Schilling, including instructions related to "[b]each and boat cleanliness."  The fact that Cohen gave such instructions does not, however, determine that he was an employee.  Given that a non-employee part owner would still have an interest in ensuring that the resort maintained adequate standards of appearance and cleanliness, Cohen's instructions may have simply reflected his self-described status as "an involved owner."  On the other hand, Schilling himself testified that Cohen appeared, at times, to have taken "a management role in the operations" of the resort.  Accordingly, a material question of fact exists as to whether Cohen had an employment relationship with Operations.

Schilling also declares that even if Cohen were an employee, he was not acting within the course of his employment when he caused Schilling's injury.  Co-employees are immune from personal suit when they injure a fellow employee while acting "within the course of their employment and in furtherance of the employer's interest." Fredette v. Simpson, 797 N.E.2d 899, 902 (Mass. 2003) (quoting Brown v. Nutter, McClennen & Fish, 696

N.E.2d 953, 956 (Mass. App. Ct. 1998)).  A co-employee acts within the course of his employment

> whenever he has, on the employer's premises, engaged in conduct consistent with his contract of hire and pertinent or incidental to his employment.

Id. at 903.  The co-employee must act with at least "one significant purpose . . . related to the employment," though he may have more than one purpose. Mendes v. Tin Kee Ng, 507 N.E.2d 1048, 1051 (Mass. 1987).  To assess the co-employee's purpose, the Court employs an "objective test." Mulford v. Mangano, 636 N.E.2d 272, 276 (Mass. 1994).

Neither party disputes that the accident occurred on the premises of Schilling's employer.  The circumstances indicate, however, and Cohen offers no objective facts to rebut, that Cohen was not acting with any significant purpose related to his employment when he allegedly caused the accident.

At the time of the accident Cohen was aboard the vessel with his girlfriend, her two minor sons and their babysitter. Cohen admits that he was on the boat for the purpose of either traveling to Nantucket or Martha's Vineyard or going whale watching.  He argues, however, that he was acting within the course of his employment because he was departing from work.

In Mendes, the Massachusetts Supreme Judicial Court ("the SJC") held that an employee who was driving to work acted with a significant employment-related purpose. 507 N.E.2d at 1051.  The

-7-

Court later hinted that the same analysis would apply to transportation for the purpose of leaving work. Fredette, 797 N.E.2d at 903.  In both cases, however, the Court emphasized that the relevant inquiry was whether the travel was motivated by at least one significant purpose related to the defendant's employment. Id.; Mendes, 507 N.E.2d at 1051.

Cohen correctly asserts that he need not show that the trip on which he was embarking was a business trip as long as his actions at the time of the accident furthered a significant work-related purpose.  The only evidence he has offered of such a purpose, however, is his subjective deposition testimony that "I'm never on vacation when I'm at the hotel. I'm working."

In Mulford, the SJC rejected a test which would have held

> the employee's testimony . . . controlling as to whether a particular purpose was or was not a significant reason for his action.

636 N.E.2d at 276.  The Court instead adopted an objective standard to determine whether an employee acted within the course of his employment.  Under this objective test, Cohen's self-serving testimony falls short of creating a genuine dispute of material fact.  Cohen offers no explanation of any work he may have been doing at the time of the accident or which he may have done at the Inn before boarding the boat to leave.  He provides, therefore, no basis for finding that he was leaving work at the time of the accident rather than that he was simply

embarking on a personal trip.[1] His testimony provides no objective, factual basis upon which a jury could find that he was acting with a business-related purpose when he allegedly caused the accident. Accordingly, Schilling is entitled to summary judgment on Cohen's co-employee immunity defense.

### 2. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on two grounds. First, Cohen argues that he is immune from liability because he was acting as a co-employee at the time of the accident. Second, Cohen and Five Star both contend that they are immune from liability because they are Schilling's employers.

#### a.     Co-Employee Immunity

As explained above in the discussion of plaintiff's motion for partial summary judgment, Schilling is entitled to summary judgment on the co-employee immunity defense. Accordingly, summary judgment in Cohen's favor based on that defense will be denied.

#### b.     Employer Immunity

Cohen and Five Star also move for summary judgment on the ground that they are immune from liability because they were both Schilling's employer at the time of the accident. Thus

---

[1] Cohen owned a private residence adjacent to the Inn and would, therefore, have had reason to be in the area even if he were not working.

Schilling's sole remedy against them would purportedly be his workers' compensation claim. Under Massachusetts law, a two-part test applies for determining employer immunity:

> [t]o be immune, (1) a direct employment relationship must exist between the injured party and the person claiming immunity, and (2) the employer must be an insured person liable for the payment of compensation.

Roberts v. Delta Air Lines, Inc., 599 F.3d 73, 77 (1st Cir. 2010) (quoting Fleming v. Shaheen Bros., Inc., 881 N.E.2d 1143, 1146 (Mass. App. Ct. 2008)). A person or entity has a direct employment relationship if it "has direction and control of the employee" and the employee "owes obedience in respect of the performance of his work" to the person or entity. Id.

### i. Cohen

The subject dispute relates to the first prong of the test. Cohen argues that he exercised direction and control of Schilling because Schilling was told by his supervisors to "listen" to Cohen and because Schilling would implement directions that Cohen gave him with respect to beach and boat cleanliness. Furthermore, as discussed above, Cohen had been designated the "President" of Operations in at least one document. Schilling also testified at his deposition that occasionally he had observed Cohen take "a management role in the operations" of the Inn.

Cohen further argues that because Schilling followed Cohen's directions Cohen must have been Schilling's employer. Schilling responds that he was only doing what any prudent employee would do if an owner or person in authority asked for help with a personal task. Moreover, Schilling notes that Cohen's position is undercut by his own testimony. During his deposition, Cohen testified that he was not involved in "the day-to-day operation of the hotel." Cohen has also failed to present evidence that he exercised any direction or control over Schilling's performance of his primary duties, such as the scheduling of boat charters and the assignment of employees to operate boats. Taken as a whole, the evidence raises a genuine issue of material fact as to whether Cohen was Schilling's employer. Summary judgment in favor of Cohen is, therefore, precluded.

### ii. Chatham Five Star LLC

Five Star proffers three theories in support of its contention that it, too, was Schilling's employer at the time of the accident. Acknowledging that Operations was the entity which formally employed Schilling, Five Star first avers that it was engaged in a "joint enterprise" with Operations as to the operation of the vessel during the summer of 2013. Such joint enterprises are specifically contemplated in the definition of an "employer" in the Massachusetts workers' compensation

statute. M.G.L. ch. 152 § 1(5). A joint enterprise involves a "single transaction" in which two entities have "an intent to associate." Gurry v. Cumberland Farms, Inc., 550 N.E.2d 127, 133 (Mass. 1990).

The SJC has set out several factors to look for when determining whether the necessary intent to associate exists: 1) an agreement jointly to share profits and losses, 2) contributions from each party of "money, assets, talents, etc., to a common undertaking," 3) a joint property interest in the object of the joint enterprise and 4) retained rights by both parties to participate in the control of the enterprise. Id.

Five Star claims that it was engaged in a joint enterprise with Operations with respect to the maintenance and use of the vessel, rendering the two entities a single employer in the context of Schilling's work involving the boat. In exchange for Operations maintaining the boat during the summer, Five Star permitted Operations to use the boat on occasion as an "amenity" for important guests and permitted the boat to be associated with the Inn. In this respect, Five Star contributed its asset, the vessel, while Operations provided boat maintenance by its staff.

With respect to the other Gurry factors, Five Star argues that the two entities shared profits and losses because during

the summer Operations paid for expenses incurred from the boat's maintenance and both entities "mutually profited" from their arrangement. It further avers that both entities had an ownership interest in the vessel and that Five Star retained some control over it by dictating that the boat would be used only by important guests rather than as a general charter vessel.

Schilling has several responses. First, he argues that Five Star has failed to proffer any evidence of an agreement for or actual sharing of tangible profits and losses outside of some intangible promotional benefit that Operations may have gained from associating the vessel with the Inn. Second and more importantly, the only evidence cited by Five Star of joint ownership of the vessel is a U.S. Coast Guard Certificate of Documentation which lists its Managing Owner as:

> Chatham Five Star LLC
> Chatham Bars Inn
> 297 Shore Road
> Chatham, MA 02633

While defendant avers that "Chatham Bars Inn" refers to Operations, Schilling points out that there is no corporate entity named "Chatham Bars Inn." Instead, a more logical explanation for this designation is that it describes the Inn as the mailing address for Five Star. That explanation is

supported by Cohen's answer to an interrogatory that Five Star is the sole owner of the vessel.

Schilling also correctly notes that where, as here, there is no written agreement memorializing a joint enterprise and

> the issue of a party's intent constitutes the essential element of . . . [the] defense, the granting of summary judgment is disfavored.

Id. Accordingly, summary judgment based on a joint enterprise theory will be denied.

The second theory advanced by Five Star directly contradicts its first. In lieu of its joint enterprise argument, Five Star next contends that it completely relinquished control and possession of the vessel, creating a demise charter which rendered Operations the boat's owner pro hac vice. Brophy v. Lavigne, 801 F.2d 521, 523 (1st Cir. 1986). Defendant notes that during the relevant time period, Operations paid for the maintenance and fueling of the vessel, provided staff to care for and navigate it, and that the boat was moored with other boats belonging to the Inn. Five Star adds that Cohen's use of the boat occurred in his capacity as President of Operations. Schilling purportedly cannot, therefore, maintain a cause of action against Five Star because it had relinquished possession and control of the vessel to Operations.

Given Five Star's earlier contention that it retained control over whether the boat would be used as a charter vessel,

defendant's own contradictory assertion creates a genuine issue of material fact as to whether Five Star had "completely and exclusively" relinquished control over the vessel. Id.  Summary judgment may not, therefore, be awarded based on defendant's second theory.

Finally, with respect to Five Star's third theory that it was Schilling's "special employer," it has presented no evidence that it exercised direction and control over Schilling separately from Operations, or that Operations relinquished its control over Schilling. Roberts v. Delta Air Lines, No. 07-cv-12154-DPW, 2008 WL 5156654 at *12; Gurry, 550 N.E.2d at 132. Accordingly, summary judgment based on defendant's third theory is also unwarranted.

### ORDER

For the forgoing reasons, plaintiff's motion for partial summary judgment (Docket No. 29) is **ALLOWED** and defendants' motion for summary judgment (Docket No. 28) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated May 10, 2016